Good morning, Your Honors. May it please the Court, my name is Suzanne Nicholson. I'm appearing on behalf of the Plaintiff and Appellant Christine Blantz. There are several issues before the Court today, and I'd like to start with the issue of whether Ms. Blantz had a protected property interest in her continued employment with the California Department of Corrections. We know that Ms. Blantz was placed with the CDCR at Calipatria State Prison, basically through a placement service through NOAA. And that as part of the terms and conditions of her placement there, she's required to follow the policies and procedures of the CDCR. She's an independent contractor for the CDCR. And the policies and procedures presented to her by the CDCR are what gave her a protected property interest in her continued employment there, because they guaranteed her due process for any adverse action contemplated by the CDCR, including termination. Do I have the facts right? She was a contractor not with the CDCR. She was a contractor with Newport Oncology. Well, I think she's considered an independent contractor for both. She's certainly not an employee. Says who? Well, there's nothing else she could be. I mean, her contract, she's being paid and everything else. Her contract is a written contract with this other outfit, not with CDCR. Yes, she does have a contract with NOAA. But she also works for the CDCR. She works at their facility. She works at their facility. She provides services to them. She's required to follow their policies and procedures. I don't think you could call her anything other than an independent contractor in terms of her relationship with the CDCR. She's certainly not their employee, and I don't think there's any dispute. No, she's certainly not their employee. No, and she's not a... But she doesn't have a contract with the CDCR. Her contract is with Newport Oncology and Health Care. Yes, that's true. She gets a 1099 from Newport Oncology Health Care. Yes. So explain to me why independent contractors, in your view, have the same protected employment interests as employees. Well, they do in this case by virtue of the policies and procedures and regulations that are promulgated by the CDCR. And what's your best case about that refers to independent contractors? Well, we have the due process policy of the CDCR that sets forth and defines nurse practitioners as independent practitioners, makes no distinction between whether these independent practitioners are employees or independent contractors. It applies across the board, and it provides that independent practitioners are entitled to a whole range of due process... No, I read that with interest, but my question is I don't think I've seen it. Maybe I just missed it in the briefing. A case that talks about independent contractors and their constitutionally protected property interests. I haven't seen a case that specifically talks about that either. I mean, if they're truly independent contractors, it seems to me that probably, unless absent some other circumstances, you can't import employment law because they're fundamentally different concepts. I understand your position is that under the facts of this case, you can. But I'm just trying to see if there's anything else out there that I've missed. Yeah, I don't think there's anything that says you can import, for example, the Civil Service Act, which is a great emphasis that's been placed on by the opposing parties. But what is clear is that our Supreme Court has said that if there's nothing out there that says provides for due process, there's nothing that prohibits the state agency from providing that to an independent contractor. There's nothing in the Civil Service Act. There's nothing in the California Constitution that prohibits the CDCR from saying, you know what, independent contractors, we're going to give you due process protections. Here's the policy that sets what those are, and that's exactly what we have here. Where does it in those provisions deal with termination? Do you cite specific language? There is. And document? Yeah, there's a provision in the license-independent due process policy that talks about termination being a procedure that can occur concurrent with a peer review process, and it provides that the practitioner would be entitled to notice. Do you cite where that is? Yeah, let me find it for you. In the excerpts of record at page 59, it's section 15. It has to do with adverse actions, which include termination, and it says that those actions can be initiated concurrent with the peer review process, and then it goes on to provide that the practitioner shall be provided written notice, and so on and so forth. So it's my position that, I mean, adverse action includes termination, and so this is a section that addresses that. But I'd also point out that the complaint doesn't just have to do with her termination. It has to do with poor recommendations that were provided to her and other, you know. I mean, the district court basically said we're assuming that there's a property interest, but you have to be deprived from all employment, not just employment within the state. So how do you respond to that? Okay. I think the district court was incorrect there. I think that under Roth versus the Veterans Administration in that case, it points out that the Supreme Court has said that your liberty interest is implicated when your good name, reputation, honor, or integrity is at stake, or, and that's an or, not an and, where the government action stigmatizes you to the extent that you're foreclosed from your opportunity to take advantage of other employment. We have, I'm not sure if it's that case, or Board of Regents, I think, that says that preclusion from all employment or all government employment is no small injury, which would suggest, you know, that that stigmatizing effect, if she's precluded from all employment with the CDCR, would be sufficient to warrant protection. It's not just that the statements alleged to have made her less attractive to the CDCR. They basically resulted in her being backlisted from employment with that agency. So I would submit that that standard has been satisfied as well. She's not been barred from any State of California employment, has she? Well, she's been precluded from employment in her field as a nurse practitioner with the CDCR. With just CDCR. There are other opportunities for nurse practitioners beyond CDCR. I don't know the answer to that question, Your Honor. How about outside of State employment? The complaint does not allege that she's precluded from practicing anywhere outside of there, no. Okay. The other issue I'd like to address briefly, unless there's other questions on the property or liberty interest, is this issue about whether the pleading standards have been met here. The question for this Court is whether construing the allegations liberally, does the complaint state a plausible claim for relief that's sufficient to put the defendants on notice of the claims against them? And if that's the case, then the dismissal was improper. The defendants are contending that the pleadings were inadequate under the Iqbal case. But we'd question here whether that heightened standard applies in a case like this one, where the plaintiff is basically unable to provide further specificity to her complaint because of the defendant's stonewalling or withholding of information from her. Did you request a stay of the motion to dismiss so you could undertake discovery and get the answers you need? We did not. What is the significance of that? I don't know. I mean, it seems to me, I mean, I take your point that you don't know what you don't know, you need to find it out, but it seems like the mechanism is you file your complaint, you immediately try to take somebody's deposition or whatever and get the answers you need to amend your complaint. And it looks like that, I take it that wasn't done here. That did not happen, no. I know, you know, our moving papers, you know, and it's alleged in the complaint that it's this lack of information that's prohibiting us from, you know, being more specific than the defendants would like. You know, and we know that under ICBAL that case states that the context in which you make your allegation that matters to whether, you know, your allegations are sufficient. So, I mean, our position here is that the factual allegations that we've made regarding the stonewalling efforts of the defendants create that context and provide the context that makes our claim plausible on its face. It's not the type of claim that would require greater specificity like in ICBAL where there were concerns about high-level administrative officials following the 9-11 attacks and issues of national security. You know, this complaint gives the defendants sufficient notice of the claims that are being made against them. And I'd also refer the court to the Bosch versus Stryker case, which talks about in cases where there's facts that are within the unique knowledge of the defendant and there was a medical malpractice action or defect, then the fact that additional facts are within unique knowledge of the defendant shouldn't be used to deny the plaintiff access to the courts. Well, I gather in part what you really want here is some information and resolution so that she can continue her employment somewhere on a good basis, right? I'm sorry, I missed the first part. I mean, what you really want, you don't really know, you don't think you have the information. What does your client really want at the end of the day of this? Does she want damages? Does she want a good recommendation? Does she want resolution? Well, the first thing she would like is to know why she was terminated, and be given an opportunity to respond to these statements that have been made about her competence and professionalism, her honor and integrity. She'd also like to be reinstated to her position. She'd like damages for the wages that she's lost in the interim while this case has been ongoing since her termination. So both equitable and compensatory relief is what she's looking for. All right. We're down to about three and a half minutes. Do you want to reserve? For rebuttal, thank you. Good morning, Your Honors. May it please the Court. Deputy Attorney General Elizabeth Vann, on behalf of the California Department of Corrections and Rehabilitation, as well as the individually named defendants, other than Mr. Terry Hill, who is represented by Mr. Attorney Martin Dodd, I would like to split the appellee's time today with Mr. Dodd, taking about seven and a half minutes for my remarks. I would also like to note that when I do refer to the CDCR defendants, I'm referring to all but Mr. Hill. During my time, I plan to focus on the following three issues. First, Ms. Blantz, a temporary registry employee, did not have a property interest in continued employment with the CDCR. Second, she has not adequately alleged a violation of her liberty interests under Section 1983. We've read your briefs. So you only have seven and a half minutes. Can I ask you to focus on the question I asked about what document creates the right to notice and hearing in the termination process? And it's my understanding from counsel that they find it in the due process document in the peer review process. Could you respond to her citation and her discussion on that? Certainly, Your Honor. First of all, the due process policy to which she refers does not create any property interest in employment. Well, that's a conclusion. She cited a statement about the process and concurrent with that termination may also occur. So could you address the language that she cited too? The language simply refers to a process. Do you have that language? It is in the record. I believe she stated it was at page 59 of the excerpts of record. This is what you're referring to at page 59 of the excerpts of record. The deputy secretary or designee may initiate an adverse action against a practitioner concurrent with the peer review process in conformance with the applicable State Personnel Board regulations and timeframes. Is that what you're referring to, Your Honor? She's saying that indicates that in something that's going to lead to termination, she's entitled to the notice and opportunity to respond. No, this is simply a reiteration of what may occur concurrently. It doesn't speak to you. It certainly isn't something that has to be done. And if it is done, all it's saying is it's reiterating what California State law is, which adverse action is a statutorily defined process. And so what this means is that if the department were to concurrently take adverse action against an employee, they have to do so in conformance with state law, which has been set forth under the Civil Service Act and the State Personnel Board rules and regulations. But when you distill that argument, it seems to me you're saying, we don't have to do anything, but if we elect to do something, we have to do it in conformance with state law. And that sounds odd to me. What would be the point of if you can fire at will, why do you have these provisions? These provisions are referring to employees who have been appointed through the competitive examination process and served a probationary period and obtained the status of a permanent employee. And that's what it refers to. Any employee who has obtained such status has, in fact, obtained a property interest in their position. And there are due process protections that are in place when an adverse action is done. And if I may interrupt, if you go on to the next, starting at the hearing process, the notice process, the language is shall, not may. Right? I didn't understand your question. I'm sorry. If you go on to what has to be done if you're initiating this, the language is shall, not may. For the adverse action? In terms of notice and hearing and so forth, right? Well, that's not discussed in the due process policy. The due process policy simply refers to a peer review policy. It's not at all discussing what has to happen if the appointing authority were to initiate an adverse action process. Those are two entirely separate procedures, and they are governed by an entirely separate law. The peer review process, which is referenced in the LIP or in the due process policy, is something that is coming out of the business and professions code section. What we're here discussing and what's at issue in this particular case is whether or not someone who is hired through a personal services contract, performing services for the state, in any way, shape, or form, can contend that they have an expectation of continued employment, but for cause if they haven't gone. Let me interrupt you again. I mean, you've told me a lot of information here that's way outside of the pleadings. How would it be? I guess, Your Honor, I respectfully disagree. What we're discussing is within the pleadings. What has been alleged here, essentially, is I have a property interest. The only way that you get there is you have to make a decision that she has an expectation of continued employment, but for cause. When you start looking at how do you make that determination, it's very clear that that expectation cannot be defined by the U.S. Constitution. It is clear. How do you determine it? You have to turn around and you have to look at state law. What we have here is we have a constitutionally mandated merit principle in the state of California. It emanates from Article VII, and it's specifically carried out through the Civil Service Act as well as regulations that come from the State Personnel Board, which has exclusive jurisdiction. I think the fallacy in Ms. Blance's argument is that she simply says that, by negative implication, there's nothing that prevents me, as somebody who is performing state services as a registry employee, from obtaining the same due process interest as somebody who is employed through the regular civil service and has passed probation and become a permanent employee. That's simply a fallacy. It ignores that you have to look first at where is it that the law regarding working within the civil service for the state emanates from. It emanates from California's constitution, and the case law cited in our briefs establishes that the merit principle, it's inviolate. There is a body of case law which says that even the legislature, though it has a free hand to craft laws treating employees differently, it still cannot infringe upon that principle. I know you want to give some time to your colleague here, but what right does she have with respect to the recommendations that are given about her? In other words, I think you're asking about the second question. Does she have any rights based on her living? If you're bad-mouthing her to future employers, what can she do about it? I'm sorry. If they are wrongfully bad-mouthing her to future employers, what can she do about it? Based on what's alleged in this case, she doesn't have any due process rights emanating from a liberty interest. And that's clear. So is your answer that she's limited to state law defamation? If she's alleged facts that establish that, yes. Well, you're down to about six minutes for your colleague. Any further questions? No, thank you. Okay. Thank you, Your Honors. Good morning. I'm Martin Dodd. I'm representing Dr. Terry Hill, the former chief medical officer for the federally appointed receiver. I want to share counsel's view of the property interest. I don't believe that Ms. Blance has a property interest. I would say that with respect to the question about that provision of the practitioner's policy that counsel has relied upon, the term adverse action is indeed a defined term under state law. And it specifically speaks to employees. And if you look at that section of that policy, each of the preceding sections talk about statutory rights of employees and what process they get to go through if they're terminated for one reason or another. And I think that we have to analyze that claim in the context of the decisions from this court and from the California courts that employment with the state of California is a matter of statute, which cannot be varied by contract. And as a practical matter, what counsel is arguing is that that document creates a kind of contract right between her client and CDCR for due process. And I would submit that that's completely contrary to the statutes which govern employment in California and decisions out of this case, Portman-Bernstein v. Lopez, Nunez v. City of Los Angeles, all of which make very clear that you can't vary the terms of employment in California by a contract provision. And that's essentially what she said is this is an implied contract. I think, though, that Dr. Hill gets dismissed from this case and dismissed with prejudice primarily because, at least with respect to the federal due process claim, because he has qualified immunity, as do, I believe, the other defendants, other individual defendants. There is no case, the question was asked, what's the case where you can point to says that an independent contractor has a property right to employment in California? There isn't one. And so any individual, any official at the time this termination or removal from CDCR occurred would not have been able to know that due process right to notice and hearing would have been created for an independent contractor. And the district court so found it, I think correctly so found it. There was no clearly established right. And, indeed, we cited a case in our brief, Wrigley v. Acquaviva, which I think is at page 38, where another district court out of the eastern district of California walked through the analysis of all the case law. And, in fact, the plaintiff in that case was also a nurse practitioner who was an independent contractor who was working in the state prisons and had the same argument that she was entitled to notice and opportunity to be heard. And the court said, whatever can be said about the law, it certainly wasn't clearly established. And so the officials had no individual liability. And that's true here as well. Counsel did not speak to any of the state law claims that were alleged against my client and have said, frankly, very little in their briefs about those state law claims. Just briefly, I want to point out that there is an eighth cause of action against Dr. Hill, which is a deprivation of due process under California state law. They've said nothing about that claim, and for good reason, because there's no substance to it. It's very clear in the cases we've cited make it clear that in order to have a deprivation of due process claim under state law, one must have a statutory benefit which has been deprived. Were those state law claims remanded to a state court? Not against my client. All the state law claims were dismissed with prejudice as to Dr. Hill. The reason being, just to be clear, the reason being is because as an agent of the federal receiver, he gets to remove it to federal court. So these claims were dismissed with prejudice. There was no statutory benefit. There's no dispute about that. The other three claims, the first, second, and third causes of action, were state law interference claims. We don't think those have been adequately pleaded, but it's very clear here that CDCR slash receiver as sort of standing in the shoes of or as the successor to the CDCR with regard to Ms. Blance's employment were expressed third-party beneficiaries of her contract with NOAA. And under this court's decisions and under other decisions out there, it's very clear that somebody in that kind of continuous, ongoing economic relationship has a right to protect their own economic relationship to, as it were, interfere or interject themselves. The CDCR slash receiver were not interlopers with regard to that contract. So those claims were properly dismissed. I have just a little bit of time left. I'm going to take just a few seconds to speak to the request to amend the ninth cause of action, the due process claim.  It would be futile to permit her to amend against my client, certainly, because he does have qualified immunity. She can't allege around that problem. But I also think that she should not be permitted to amend because, A, she didn't request it in the district court. She's had a couple of opportunities, and she hasn't explained why she didn't take those opportunities or seek to amend in the district court. So for all those reasons and those set forth in the brief, we ask that you affirm the dismissal as to my client. Thank you very much. Thank you. Just briefly, Your Honor, I'll respond to the comments of the CDCR defendants talking about you had asked the question about the document providing that she has a right to notice in a hearing regarding termination. And I would say that, at the very least, those provisions of the due process policy create a factual issue regarding whether she had a legitimate expectation and that she should be able to prove her claim. Given that opportunity, her Perry v. Syndrome, in this case, is just like that, where she's alleged facts that could create a legitimate property interest, and she should be entitled to pursue those claims. The CDCR seems to think that the license due process policy for licensed independent practitioners is only for permanent employees. There's nothing in that document that states it's only for civil service employees. It applies to practitioners, which are defined to include nurse practitioners, and there's no distinction made between employees and independent contractors. I would submit that under state law, which defines the parameters of what is a protected property interest, where we have a Civil Service Act and a Constitution that are silent on the issue of whether an independent contractor has due process rights, then the CDCR's own rules, policies, and regulations can create that expectation. And I think the law on that is clear, and it's been sufficiently clear to defeat any claim of qualified immunity in that respect. Mr. Hills has argued that the adverse action terminology in the due process policy refers to employees only. There's nothing in the due process policy that incorporates definitions he's He mentioned that with respect to qualified immunity, that we've conceded there's no case out there that talks about independent contractors specifically, but I would submit that that doesn't matter because there are cases that clearly establish that rules and regulations and policies can create an expected property interest, and that's exactly what we have here. CDCR can't put out these rules and regulations and then just ignore them and claim qualified immunity on that basis. The Aquavina case that Mr. Hills cites, that case is a district court case that relies on the district court opinion in this case for its holding. It gives no analysis whatsoever of the qualified immunity question. This case, obviously, we're here on appeal on that very question, and so that case is unhelpful to their position. And I know I'm about out of time, so unless there's any other questions. No, thank you. Thank you for your argument. Thank you, Your Honor. The case is heard. We'll be submitted for decision, and we'll be in recess for the morning. Potentially adjourned. All rise. This court is adjourned. This court is adjourned.
judges: Thomas, Silverman, Fisher